**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANDREW CAIRNS,** | **CIVIL ACTION** |
| Petitioner, | |
| *v.* | **No. 19-5351-KSM** |
| **THOMAS MCGINLEY, et al.,** | |
| Respondents. | |

<u>**MEMORANDUM**</u>

MARSTON, J.                                          August 22, 2023

      Pro se petitioner Andrew Cairns, who is currently incarcerated at SCI Coal Township, petitions this Court for a writ of habeas corpus pursuant 28 U.S.C. § 2254.  (*See* Doc. Nos. 1, 15.)  He raises six claims of error and seeks an evidentiary hearing.  (*See generally* Doc. No. 15.)  On March 10, 2022, the Honorable Richard A. Lloret, United States Magistrate Judge, submitted a Report and Recommendation ("R&R"), rejecting all six claims, denying Cairns's request for an evidentiary hearing, and recommending that Cairns's Amended Petition be dismissed with prejudice.  (*See generally* Doc. No. 28.)  Cairns objects to the R&R as to five of his six claims, renews his request for an evidentiary hearing, and argues that Judge Lloret was biased against him.  (*See* Doc. No. 34.)  For the reasons discussed below, Cairns's objections are overruled, and the Court adopts the R&R in its entirety, with only one minor typographical change.[1]

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Underlying Conduct

The R&R succinctly recounts the facts underlying this case as found by the Bucks

---

[1] Page one of the R&R refers to a "Mr. Myatt."  (Doc. No. 28 at 1.)  The Court believes that Judge Lloret meant to refer to "Mr. Cairns."

County Court of Common Pleas:

On February 19, 2013, beginning at approximately 7:30 p.m., [Cairns] fired a .44 Magnum handgun nineteen times out of his bedroom window into the surrounding area of the Jefferson on the Creek Apartment complex in Warminster Township, Bucks County. After [Cairns] fired the first two shots, [Cairns's significant other], Deborah Silva, called 911 from the living room of their shared apartment to report that [Cairns] had several firearms in their apartment and that he was threatening to kill himself. Ms. Silva remained on the line with the 911 dispatcher and was instructed to evacuate the apartment for her own safety.

At approximately 7:42 p.m., several officers of [the] Warminster Township Police Department responded to the Jefferson on the Creek Apartment complex. As the officers approached building 2000, the building in which [Cairns's] apartment, apartment 2004, was located, they heard gunshots and could hear bullets hitting trees and the ground in their vicinity. The officers determined that the gunshots were being fired from apartment 2004. The officers set up a perimeter around building 2000, positioning three officers along a split-rail fence, approximately 100 yards from the front doors to apartments 2001 through 2004. Due to their distance from the front doors and the lighting conditions, the officers were unable to see the apartment numbers posted on the front doors. The officers were informed via police radio that the entrance to apartment 2004 was the fourth door from the left. However, the numbering of the doors was out of sequential order. Apartment 2004 was the third door from the left and apartment 2003 was the fourth door from the left.

The officers instructed Ms. Silva, via the 911 dispatcher, to run towards the front of the apartment complex where other responding officers were waiting for her. The 911 dispatcher informed Ms. Silva[, who had exited the apartment,] that in order to help [Cairns] and protect herself and the police officers from gunfire, she needed to get away from her front door and run to the front of the complex. Despite repeated attempts to persuade Ms. Silva, she remained waiting outside her front door. [Cairns] continued to fire shots and the officers could hear projectiles impacting the ground directly in front of them.

Ms. Silva, while remaining on the phone with 911, knocked on the front door of apartment 2003. Ms. Silva intended to ask apartment 2003's occupant, Marie Zienkewicz, to use her phone to call [Cairns]. Officer Sean Harold was positioned at the third post of the split-rail fence when he saw the front door of apartment 2003 open. Officer Harold saw a person begin to emerge and reach toward Ms.

Silva. Still under the impression that the door opening was actually the door to apartment 2004, Officer Harold believed that both Ms. Silva and the officers on scene were in immediate danger. Officer Harold fired at the person that emerged from the doorway, shooting and killing Ms. Zienkewicz.

At approximately 2:30 am. on February 20, 2013, [Cairns] was taken into custody. That same day, the crime scene and surrounding area were processed for evidence. Of the nineteen shots that were fired [by Cairns], one hit the embankment in front of the second post on the split-rail fence [the "Embankment Bullet"], one went through the fourth post of the fence, and a third went through a fence to the pool located behind where the officer who fired the fatal shot was positioned. Several shots were determined to have hit trees directly in line between [Cairns's] bedroom window and where the officers were positioned. Finally, one projectile traveled across the street, entered a private residence, and passed through the resident's bedroom. Located in [Cairns's] bedroom was a "suicide Last Will and Testament note" describing, in part, [Cairns's] anger towards the Warminster Township Police Department.

*Commonwealth v. Cairns* ("*Cairns Initial PCRA*"), No. CP-09-CR-3357-2013, 2018 WL 10484002, at *1–2 (Pa. Ct. Comm. Pl. Jan. 11, 2018) (citations omitted).

## B.    Pretrial Proceedings

After his arrest, Cairns was charged with one count of first degree murder for the death of Zienkewicz, under the theory of transferred intent.[2] *See Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Information (Bucks Ct. Com. Pl.). He was also charged with attempted murder, assault on a law enforcement officer, discharge of a firearm into an occupied structure, possession of an instrument of crime, and nine counts each of aggravated assault and recklessly endangering another person. *Id.*

---

[2] "Pursuant to the doctrine of transferred intent, the intent to murder may be transferred where the person actually killed is not the intended victim." *Commonwealth v. Jones*, 912 A.2d 268, 279 (Pa. 2006); *see also* 18 Pa. Stat. & Cons. Stat. § 303(b)(1); *Commonwealth v. Thompson*, 739 A.2d 1023, 1029–30 (Pa. 1999) ("The transferred intent theory provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime." (quotation marks omitted)).

Throughout his pretrial proceedings, Cairns was represented by Bucks County Public Defenders Michael Lacson, Esq., and Alicia Baatz, Esq.  In preparation for trial, Attorneys Lacson and Baatz made formal, written discovery requests of the Commonwealth that sought, among other things, *Brady* and *Giglio* material.  *See Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Request for Pre-Trial Disco. (Bucks Ct. Com. Pl. June 6, 2013).  They also filed numerous pretrial motions on Cairns's behalf, including a motion for state habeas corpus relief challenging the sufficiency of the Commonwealth's evidence on causation in connection with the criminal homicide charge.  *Commonwealth v. Cairns*, CP-09-CR-0003357-2013, PCRA Hearing Tr. (Bucks Ct. Comm. Pl July 6, 2017), at 132:23–133:12 ("PCRA H'rg Tr.").  In addition, Attorneys Lacson and Baatz hired an expert in ballistics and use of force, Dr. Emanual Kapelsohn, to opine on the random nature of Cairns's shots, how the lighting within and outside of the apartment would have affected the visibility from Cairns's bedroom, and whether Officer Harold's use of force was reasonable.  *Id.* at 130:5–11.[3]

In the months leading up to trial, Cairns's attorneys repeatedly met with Cairns to review the evidence in their possession, to explain the nature of the charges against him, and to prepare for trial.  *Id.* at 132:2–15 (Attorney Lacson testifying that he and Attorney Baatz met with Cairns to go "over basically every single piece of evidence that [they] had").  During one such meeting, Cairns stated he would like to plead guilty.  *Id.* at 144:17–145:2.  Accordingly, defense counsel turned their efforts to negotiating a plea with the Commonwealth on Cairns's behalf, and Attorney Lacson directed Dr. Kapelsohn, who had been hired on an hourly basis, to suspend

---

[3] Before drafting a final report, Dr. Kapelsohn informed Attorney Lacson that he was unable to provide a definitive opinion on the appropriateness of Officer Harold's use of force at the scene.  PCRA H'rg Tr. at 130:19–25.  This conclusion caused defense counsel to question whether they would ultimately call Dr. Kapelsohn at trial.  *Id.* at 1311–14.

work on the case.  *Id.* at 131:15–22.

### C.    Guilty Plea Hearing

On January 17, 2014, Cairns entered a negotiated guilty plea.  Under the plea agreement, the Commonwealth sought leave to amend the Information to change the first degree murder charge to third degree murder and to *nolle pros* the charges for attempted murder, assault of a law enforcement officer, and one count of aggravated assault.  *See Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Revised Information (Bucks Ct. Com. Pl.), at 1.  Cairns, in turn, agreed to plead guilty to third degree murder and the remaining charges.  *Id.*  At the January 17 hearing, the trial judge, the Honorable Jeffrey L. Finley, accepted Cairns's guilty plea to the Revised Information.  *See generally Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Guilty Plea & Sentencing Tr. (Bucks Ct. Comm. Pl Jan. 17, 2014) ("Plea Tr.").

During the plea colloquy, Cairns testified that he wished to plead guilty and that he could hear and understand everything being said by Judge Finley.  *See id.* at 3:25–4:12. At first, Cairns testified that he was not, at the time, "under the influence of any type of drug, alcohol, medication, or any other substance at all that would affect [his] ability to understand . . . the consequences of pleading guilty."  *Id.* at 4:13–20.  A few moments later, however, Cairns admitted that he was under the care of a mental health professional and taking medication, including Neurontin, Zyprexa, and BuSpar.  *Id.* at 4:21–5:13; *see also id.* at 45:5–18 (defense counsel recounting Cairns's struggles from "bouts of mental illness" and acknowledging that he is "on the medication that he wasn't on before, which addresses his mental health illness"); *id.* at 46:13–16 (same).  In response to further questioning by Judge Finley, Cairns maintained that he understood the proceeding:

> THE COURT: All right. Do you know of any reason, whether that's the underlying mental health issues or that medication or any other reason at all, that would make it difficult for

5

> you to understand what you and I are discussing today or the
> consequences of this action or the rights that you're giving up?
>
> THE DEFENDANT:  No, Your Honor.

*Id.* at 5:14–22.  Cairns also confirmed that he "had sufficient opportunity to meet with counsel

and discuss . . . the charges and the evidence" along with "defenses that [he] might have been

able to raise."  *Id.* at 13:1–14; *see id.* at 13:15–21 (affirming that he was "satisfied with [his

counsels'] assistance" and "had sufficient time to meet with them").

After this initial discussion, Judge Finley described each charge against Cairns, including

third degree murder and aggravated assault:

> THE COURT:  Now, you are pleading guilty to a number of
> different crimes and I want to go over them.
>
> The first is that of third-degree murder.  That is an offense
> where the Commonwealth, now by amending this bill of
> information, has charged that on or about February 19th of 2013,
> you did commit third-degree murder in that you did maliciously
> cause the death of another person by your conscious disregard of an
> unjustified and extremely high risk that your actions might cause
> death or serious bodily injury.
>
> Further, that you did, Andrew Graham Cairns, did repeatedly
> shoot a handgun in the direction of police officers in a densely
> populated area, which directly and substantially caused the death of
> Marie Zienkewicz by causing the police to return fire.  Do you
> understand that?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> . . . .
>
> THE COURT:  All right.  Now, the next offense is that of
> aggravated assault.  That is contained here in Cout[s f]ive through
> 12, that is that you did attempt by physical menace to put an officer,
> agent, employee or another person in danger or fear of imminent
> serious bodily injury. . . .  Do you understand that, sir?
>
> THE DEFENDANT:  Yes, Your Honor.

*Id.* at 14:4–16:12.

After discussing each charge, Judge Finley asked Cairns whether anyone had "threatened, forced or coerced [him] in any way into entering this plea of guilty," to which Cairns responded, "No, Your Honor." *Id.* at 20:8–11. Last, Cairns confirmed that he was "entering this plea knowingly, voluntarily, intelligently, and of [his] own free will," and that he was pleading guilty because he "d[id], in fact, agree that [he] committed these crimes." *Id.* at 21:4–16.

At the end of this line of questioning, Attorney Lacson asked Cairns to confirm: (1) counsel "went over [Cairns's] case in the motions, jury selection . . . all of that with [him]"; (2) "other members of [the Bucks County Public Defenders] office, more senior members of [the] office . . . did the same thing:  [they] went over [Cairns's] case, the rights [he was] giving up and the trial process"; and (3) "a more senior attorney in [the] office as well as [trial counsel] went over the guilty plea colloquy and what it means to plead guilty." *Id.* at 24:2–16. Cairns answered "yes," to each question. *Id.*

Afterward, the Commonwealth outlined the facts underlying the guilty plea in a recitation substantially similar to the one given by the Court above. *Id.* at 25:2–34:9; *see also id.* at 34:10–35:17 (incorporating the preliminary hearing transcript as providing an additional factual basis for the guilty plea). And Cairns confirmed that the "facts as stated by the District Attorney on the record" were "substantially correct and make out the charges that [he is] pleading guilty to." *Id.* at 36:12–16.

Finally, Judge Finley found that Cairns "entered his guilty plea knowingly, voluntarily, and intelligently.  He certainly to me seems to have a full and complete understanding of the discussions we've had as to the rights he has to trial, the rights that he's giving up by pleading guilty, and the consequences of pleading guilty." *Id.* at 47:16–48:2. Recognizing the highly reckless nature of Cairns's decision to shoot a gun at random, 19 times out of his bedroom

window, Judge Finley then sentenced Cairns to the recommended sentence of no less than 14 and no more than 30 years' incarceration on the third degree murder charge and no further penalty on the remaining charges. *Id.* at 50:17–52:5.

Cairns did not file a direct appeal of his conviction or sentence.

### D.     Initial State Collateral Proceeding

Although Cairns did not file a direct appeal, he did seek collateral review pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), filing his initial pro se petition with the Bucks County Court of Common Pleas on December 4, 2014.  Cairns later retained new counsel, Joseph London, Esq., to represent him during the initial PCRA proceeding.  *See Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Discovery Conference Tr. (Bucks Ct. Com. Pl. June 23, 2016).

### 1.     Discovery Requests

Throughout that proceeding, Cairns and Attorney London filed numerous discovery requests, seeking among other things, printed copies of the photos taken at the crime scene, any report completed by Dr. Kapelsohn, and transcripts of 911 calls that Cairns made early in the day on February 19, 2013 to report Silva's mental state.  *See generally, e.g.*, *Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Request for Discovery (Bucks Ct. Com. Pl. Mar. 16, 2016); *Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Memo. of Law (Bucks Ct. Com. Pl. July 5, 2016).  Judge Finley rejected the majority of those requests on the grounds that Cairns: (1) sought discovery that was in the possession of his trial counsel, not the Commonwealth, and/or (2) failed to prove exceptional circumstances warranted additional discovery at the PCRA stage.  *See generally, e.g.*, *Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Discovery Conference Tr. (Bucks Ct. Com. Pl. June 23, 2016); *Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Order (Bucks Ct. Com. Pl. July 14, 2016).

8

2.    **Counseled Amended PCRA Petition**

After Judge Finley rejected Cairns's discovery requests, Attorney London filed an Amended PCRA Petition on Cairns's behalf on August 15, 2016.  As relevant here, the Amended PCRA Petition argued that Cairns's trial attorneys were ineffective because they:  (1) failed to investigate the issues of causation and transferred intent in connection with the facts of his case, (2) failed to effectively utilize Dr. Kapelsohn, who had concluded that Officer Harold's use of force at the scene was unreasonable, and (3) failed to properly advise Cairns about the law on "transferred intent, felony murder rule, and the elements necessary for the Commonwealth to prove beyond a reasonable doubt the charge of third degree murder."  *Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Amended PCRA Petition (Bucks Ct. Comm. Pl. Aug. 15, 2016), at ¶¶ 26–31 ("Amended PCRA Petition").  The court later allowed Cairns to orally amend his Amended PCRA Petition for the limited purpose of adding an allegation that trial counsel were also "ineffective for not knowing that [Cairns], because of the[ ] medications [that he was taking on the day he pleaded guilty], was not knowingly and voluntarily and intelligently entering a plea."  PCRA Hearing Tr. at 75:23–76:14.

In addition to his ineffective assistance of counsel claims, Cairns also argued that he was entitled to relief because new exculpatory evidence had become available and would have altered his decision to plead guilty.  Amended PCRA Petition, at ¶¶ 35, 37.  First, he argued that "ballistic evidence" proved that Cairns "never fired a firearm at police or anyone else thus not justifying the police returning fire and subsequently taking the life of . . . Zienkewicz."  *Id.*  Second, he argued that after the guilty plea, the "Warminster Township Police Department settled a wrongful death action filed by the Estate of [Zienkewicz] for $650,000."  *Id.*

Finally, Cairns argued that "the delay in his receiving all related discovery documents, videos, pictures, audio recordings, etc. . . . prejudiced [him] from being able to advocate an

adequate defense against the Commonwealth's criminal charges." *Id.* at ¶ 36.

### 3. PCRA Hearing

Judge Finley held a hearing on these arguments on July 6, 2017. *See generally* PCRA H'rg Tr. During that hearing, Cairns testified on his own behalf and called three witnesses: Silva, Dr. Kapelsohn, and Trial Attorney Lacson. *See generally id.* The Commonwealth cross examined each witness but did not call additional witnesses. *See generally id.* After the hearing, Cairns and the Commonwealth submitted competing memoranda on whether Cairns was entitled to relief under the PCRA. In his memorandum, Cairns reiterated the arguments outlined above. *See Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Cairns's PCRA Memo (Bucks Ct. Comm. Pl. Sept. 19, 2017), at 6–8. In its response brief, the Commonwealth opposed each ground for relief. *See generally Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Commonwealth PCRA Memo (Bucks Ct. Comm. Pl. Oct. 11, 2017). On October 25, 2017, Judge Finley denied Cairns's Amended PCRA Petition. *See Commonwealth v. Cairns*, CP-09-CR-0003357-2013, Order (Bucks Ct. Comm. Pl. Oct. 25, 2017).

### 4. PCRA Appeal

Cairns, through new counsel, John J. Fioravanti, Jr., Esq., appealed Judge Finley's denial to the Pennsylvania Superior Court. *See Commonwealth v. Cairns*, 3655 EDA 2017, Notice of Appeal (Pa. Super. Ct. Nov. 15, 2017). Cairns raised five broad questions on appeal:

> [1.]    Was trial counsel ineffective in inducing [Cairns] to unknowingly plead guilty as there was not a factual basis?
>
> [2.]    Was trial counsel ineffective in inducing [Cairns] to plead guilty at a time when he was not afforded the opportunity to review discovery?
>
> [3.]    Was trial counsel ineffective in failing to engage the services of an expert to establish improper police procedures to support [Cairns's] innocence?

> [4.]    Did the [initial PCRA] court err in failing to admit a wrongful death settlement between Warminster Township and the family of the deceased?
>
> [5.]    Did the [initial PCRA] court err in failing to find exceptional circumstances, pursuant to 41 Pa. C.S. § 9545(d)(2) and Pa. R. Cr. P. 902(E)(1), entitling Appellant to discovery requests?

*Commonwealth v. Cairns ("Cairns PCRA Appeal")*, No. 3655 EDA 2017, 2019 WL 1224696, at *2 (Pa. Super. Ct. Mar. 15, 2019) (quoting Appellant's Brief, at 4); *see also Cairns Initial PCRA*, 2018 WL 10484002, at *2–3.

On January 11, 2018, Judge Finley addressed each of the five errors in a written opinion, issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).[4]  *See generally Cairns Initial PCRA*, 2018 WL 10484002; *see also* 210 Pa. Code § 1925(a) ("Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall . . . file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.").  And on March 15, 2019, the Pennsylvania Superior Court affirmed Judge Finley's ruling in an unpublished opinion.  *See Cairns PCRA Appeal*, 2019 WL 1224696 (Pa. Super. Ct. Mar. 15, 2019).

---

[4] In his Concise Statement of Errors Complained of on Appeal, Cairns identified 23 alleged errors.  *See Commonwealth v. Cairns*, 3655 EDA 2017, Concise Statement of Errors Complained of on Appeal (Pa. Super. Ct. Dec. 20, 2017).  In his opinion, Judge Finley viewed the 23 errors as stating six broad categories of error on appeal—the five categories identified above and a sixth related to whether trial "counsel was ineffective for allowing [Cairns] to proceed to a guilty plea when he was under the influence of various medications."  *Cairns Initial PCRA*, 2018 WL 10484002, at *2–3.  Judge Finley rejected this sixth claim, finding "there is no evidence to support the claim aside from [Cairns's] own post-plea self-serving testimony," which is contradicted by the "record and testimony by guilty plea counsel."  *Id.* at *5.  In his papers to the Superior Court, Cairns essentially adopted Judge Finley's distillation of the questions raised on appeal, but he omitted any reference to "the claim that counsel allowed [Cairns] to plead while under the influence of medications."  Accordingly, the appellate court found this claim abandoned.  *Cairns PCRA Appeal*, 2019 WL 1224696, at *2 n.4.

We briefly discuss each court's findings below.

a.    *Factual Basis for Third Degree Murder*

First, Judge Finley found that a valid factual basis existed for Cairns's guilty plea to third

degree murder.  *Cairns Initial PCRA*, 2018 WL 10484002, at *3.  Relying on Pennsylvania

cases, Judge Finley explained the legal standards for malice, causation, and transferred intent,

and found that each standard was supported by the facts underlying Cairns's case.  *Id.* at *3–4

(citing *Commonwealth v. Fisher*, 80 A.2d 1186, 1191 (Pa. 2013) and *Commonwealth v. Jones*,

912 A.2d 268, 280 (Pa. 2006)).  Importantly, Judge Finley concluded:

> [Cairns] need not have intended any particular person to be injured
> in order to satisfy the elements of Third Degree Murder.  It is
> sufficient that [Cairns] intentionally acted by shooting nineteen
> times out of this window into an area where anyone, including the
> responding officers waiting along the perimeter, could have been
> shot and killed with complete disregard for the consequences of his
> actions . . . .  This malicious intent was transferred to Ms.
> Zienkewicz . . . .  Appellant's conduct, his recklessness of
> consequences, and conscious disregard for the extremely high risk
> that his conduct might cause death or serious bodily injury, and the
> fact that his conduct did result in Ms. Zienkewicz's death, is
> sufficient to establish Third Degree Murder.

*Id.* at *4; *see also id.* at *5 ("[T]his Court finds that a sufficient factual basis supports

Appellant's guilty plea to Third Degree Murder.").  Because Cairns "failed to prove that his

claim challenging the Third Degree Murder conviction has arguable merit," his ineffective

assistance of counsel likewise failed.  *Id.* at *5.

On appeal, the Pennsylvania Superior Court affirmed this ruling:  "[T]he trial court

correctly decided that the Commonwealth properly established a factual basis for third degree

murder.  [Cairns] consciously disregarded an unjustified and extremely high risk that his actions

in shooting nineteen times might cause serious bodily injury.  The PCRA court properly

determined this claim lacked arguable merit."  *Cairns PCRA Appeal*, 2019 WL 1224696, at *4.

b.      *Opportunity to Review Discovery*

Next, Judge Finley considered Cairns's argument that "counsel was ineffective for allowing [him] to proceed to a guilty plea . . . when he did not have the benefit of reviewing the discoverable materials." *Cairns Initial PCRA*, 2018 WL 10484002, at *3.  Judge Finley rejected Cairns's self-serving testimony at the PCRA hearing that he had been denied access to discovery materials.  Judge Finley found "Cairns's testimony to be self-serving and found [Cairns] to be an overall incredible witness," who "frequently gave different responses to the same questions asked of him," "altered his answers several times," and admitted that "he had previously lied to this Court."  *Id.* at *5.  Instead, Judge Finley credited Attorney Lacson's testimony that he "went over basically every single piece of evidence that [he] had" with Cairns.  *Id.* at *6.

On appeal, the Superior Court found that Cairns was asking it to "ignore [Judge Finley's] credibility determinations."  *Cairns PCRA Appeal*, 2019 WL 1224696, at *5.  It declined to do so, and accordingly, found that Cairns's argument did not merit relief.  *Id*.

c.      *Dr. Kapelsohn's Expert Opinion*

Next, Judge Finley rejected Cairns's argument that trial counsel were "ineffective for failing to fully utilize the services of expert Emanuel Kapelsohn."  *Cairns Initial PCRA*, 2018 WL 10484002, at *3.  The court found that "counsel had a reasonable strategic basis for instructing Dr. Kapelsohn to suspend all work on this case before counsel obtained Dr. Kapelsohn's completed report."  *Id.* at *6 (referencing trial counsel's testimony that Dr. Kapelsohn was previously unable to opine on the reasonableness of the officer's use of force and counsel's concern that if called, Dr. Kapelsohn's conclusions on this issue would be used to harm the defense).

On appeal, the Superior Court rejected Cairns's claim that trial counsel were ineffective for failing "to fully engage" Kapelsohn.  *Cairns PCRA Appeal*, 2019 WL 1224696, at *5.  The

court found that because Cairns failed to raise the argument in his Amended PCRA Petition, he waived it, and it could not be considered on appeal. *Id*. at *6 (citing *Commonwealth v. Santiago*, 855 A.2d 682, 691 (Pa. 2004)). In the alternative, the court found that Cairns could not establish prejudice or arguable merit as to this claim because his "self-serving claim that a ballistic expert's testimony would have swayed a hypothetical jury on the issue of whether [Cairns] had the requisite 'malicious state of mind,' is unsupported by pertinent authority and merely speculative." *Id*. at *6.

d.      *Wrongful Death Settlement*

Fourth, Cairns argued that Judge Finley erred in prohibiting Cairns from introducing the settlement between Warminster Township Police Department and Ms. Zienkewicz's family. *Cairns Initial PCRA*, 2018 WL 10484002, at *7. Judge Finley noted that he had accepted the settlement as evidence during the July 6, 2017 PCRA hearing, but nonetheless found that the settlement did not constitute newly-discovered evidence that warranted relief. *Id.* (finding that contrary Cairns's assertions, the settlement "does not constitute exculpatory evidence" because Cairns was not a party to the settlement and the Township denied liability in connection with the settlement).

Similarly, the appellate court rejected Cairns's assertion that Judge Finley erred when he failed to admit a wrongful death settlement. *Cairns PCRA Appeal*, 2019 WL 1224696, at *6. Because Judge Finley did admit the settlement agreement into evidence, this claim on appeal was frivolous. *Id.* Accordingly, the court declined to consider whether the settlement agreement should be considered newly discovered evidence. *Id*. at *6 n.7. Relatedly, the appellate court dismissed Cairns's argument that the settlement agreement was exculpatory as to him, noting that he was not a party to the agreement and that the Township denied responsibility in it. *Id*. at *6.

e.      *PCRA Discovery Requests*

Finally, Judge Finley rejected Cairns's argument that he erred by denying Cairns's discovery requests at the PCRA level.  *Cairns Initial PCRA*, 2018 WL 10484002, at *8.  The Pennsylvania Rules of Criminal Procedure allow discovery in a postconviction proceeding *only* when the petitioner pleads and proves the existence of "exceptional circumstances." *Id.*  After reviewing each of Cairns's discovery requests, Judge Finley found that Cairns failed to meet this burden because "[m]any of [Cairns's] requests were grounded in mere speculation and were nothing more than a fishing expedition in hopes that he may discover some exculpatory evidence." *Id.*

The appellate court likewise rejected Cairns's claim that Judge Finley erroneously denied his discovery requests.  *Cairns PCRA Appeal*, 2019 WL 1224696, at *6.  Among other things, the appellate court noted that Cairns failed "to demonstrate how the documents were exculpatory, or why the discovery requests were exceptional." *Id.*  Accordingly, it found "no abuse of discretion by the PCRA court" and declined to disturb Judge Finley's ruling.  *Id.*

*            *            *

Cairns appealed the Superior Court's ruling to the Pennsylvania Supreme Court, which denied his petition for allowance of appeal on October 9, 2019.

**E.      Habeas Proceedings**

On October 31, 2019, Cairns filed a pro se habeas petition in this case.  (*See* Doc. No. 1; *see also* Doc. No. 15.)  His initial petition raised six grounds for habeas relief:

- Ground 1:  Trial counsel were ineffective for allowing Cairns to plead guilty to aggravated assault when there was no factual basis to support that charge

- Ground 2:  Trial counsel were ineffective for allowing Cairns to plead guilty to third degree murder when there was no factual basis to support that charge

- Ground 3:  Trial counsel were ineffective because they gave inaccurate advice and

"coerc[ed] Mr. Cairns to plead guilty"

- Ground 4:  Trial counsel were ineffective because they failed to properly identify a *Brady* violation

- Ground 5:  Trial counsel were ineffective when they failed to recognize that Cairns's medications impaired his cognitive functioning during the guilty plea hearing

- Ground 6:  The initial PCRA court erred in failing to admit into evidence the Warminster Township Police Department's settlement with Zienkewicz's family

(Doc. No. 1 (identifying each ground for relief).)  On these bases, Cairns asks this Court to withdraw his guilty plea and grant him a trial.  The Commonwealth opposes the petition, arguing that Cairns failed to exhaust Grounds 1, 3, 4, and 5, because he failed to raise those claims at all stages of his PCRA proceeding.  (*See* Doc. No. 8.)  The Commonwealth also argues that Cairns has failed to show ineffective assistance of trial counsel as to any of the stated grounds for relief. (*Id.*)

On June 4, 2020, Cairns filed an amended habeas petition, which explained, in detail, the basis for his request for relief.  (*See* Doc. No. 15.)  The Amended Petition is extremely long, but it appears to assert many of the same arguments asserted in Cairns's initial petition.  (See *id.* at 10.)  Cairns also requested an evidentiary hearing on the issues raised in the Amended Petition. (*Id.* at 98.)  The Commonwealth filed an answer in opposition to the Amended Petition, arguing that Cairns's claims are not cognizable on habeas review and are procedurally defaulted and/or meritless.  (Doc. No. 26.)  Cairns filed a reply brief.  (Doc. No. 27.)

On March 10, 2022, Magistrate Judge Lloret entered an R&R, finding that "Mr. [Cairns] presents no grounds for relief" and recommending that Cairns's "petition be dismissed with prejudice."  (Doc. No. 28 at 1.)  Specifically, Judge Lloret found each of the six grounds unexhausted, procedurally defaulted, and/or meritless.  (*See generally id.*)  Judge Lloret also recommends denying Cairns's request for an evidentiary hearing.  (*Id.* at 24–25.)

16

Cairns objects to all but one section of the R&R.  (Doc. No. 34.)[5]  He also renews his request for discovery/an evidentiary hearing.  (*See* Doc. No. 40.)  Last, Cairns argues that Judge Lloret "abandoned his role as independent arbiter of the facts and assumed the role as advocate or co-counsel for the State . . . displaying an appearance of impropriety."  (*Id.* at 5–6 (citing *Day v. McDonough*, 547 U.S. 198 (2006).)  The Commonwealth opposes Cairns's objections and asks the Court to adopt the R&R in its entirety.  (*See* Doc. No. 35.)

## II.    LEGAL STANDARD

"In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation."  *Piasecki v. Ct. of Common Pleas*, No. 14-cv-7004, 2021 WL 1105338, at *3 (E.D. Pa. Mar. 23, 2021).  Under that Rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections."  *Id.* (quoting *Savior v. Superintendent of Huntingdon SCI*, No. 11-cv-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012)).

When a party objects to a magistrate judge's findings, the district court must make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 673 (1980).  "Ultimate adjudicatory power" resides with the district court "after receiving assistance from and the recommendation of the magistrate."  *Raddatz*, 447 U.S. at 692.

---

[5] Cairns does not object to Judge Lloret's findings and conclusions on his sixth ground for relief regarding the admission of the Township's settlement with the Zienkewicz family.  After reviewing Judge Lloret's analysis on this ground, the Court agrees with his findings and conclusions and adopts the R&R on this point.  *See EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) ("Even absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." (quotation marks omitted)); *see also Mathews v. Weber*, 423 U.S. 261, 271 (1976) ("[T]he authority and responsibility to make an informed final determination remains with the [district court] judge.").

And after reviewing the magistrate judge's conclusions, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations" and "receive further evidence, or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1); *Raddatz*, 447 U.S. at 673–74.  But "[o]bjections [that] merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review."  *Gray v. Delbiaso*, Civil Action No. 14-4902, 2017 WL 2834361, at *4 (E.D. Pa. June 30, 2017); *see also Prout v. Giroux*, Civil Action No. 14-3816, 2016 WL 1720414, at *11 (E.D. Pa. Apr. 29, 2016) ("Where objections do not respond to the Magistrate's recommendation, but rather restate conclusory statements from the original petition, the objections should be overruled.").

## III.   DISCUSSION

The Court addresses Cairns's objections to Judge Lloret's recommendations before turning to Cairns's renewed request for an evidentiary hearing and/or additional discovery and Cairns's argument that Judge Lloret was improperly biased in favor of the Commonwealth.

### A.   Judge Lloret's Findings and Conclusions

As stated above, Judge Lloret recommends dismissal of the Amended Petition because each ground for relief is unexhausted, procedurally defaulted, and/or meritless.  The Court discusses the standards governing these concepts in turn before addressing the substance of Cairns's objections to the R&R.

#### 1.   <u>Legal Standards</u>

##### a.   *Exhaustion of State Court Remedies*

A petitioner for a writ of habeas corpus must exhaust his remedies at the state level before he can present his claims in federal court.  28 U.S.C. § 2254(b)(1)(A).  If "he has the right under the law of the State to raise, by any available procedure, the question presented," then the petitioner has not exhausted his state court remedies.  28 U.S.C. § 2254(c).  The exhaustion

requirement "ensures that the same method of legal analysis that is used by the federal court in resolving the petitioner's claim was also readily available to the state court when it adjudicated the claim." *Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990).  Federal courts must rigorously enforce this requirement out of respect for the principles of comity and federalism. *Rose v. Lundy*, 455 U.S. 509, 510 (1982); *see also Engle v. Isaac*, 456 U.S. 107, 128 (1982) ("The States . . . hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law.").

The petitioner bears the burden of demonstrating each of his claims has been exhausted. *Rose*, 455 U.S. at 515.  Satisfying this burden involves establishing that the federal claims were "fairly presented" to the state courts.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  To establish fair presentation, "it is not enough that the petitioner present[ed] to the state court the facts upon which a federal claim is based."  *Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982) (per curiam). Rather, the petitioner must have "provide[d] the state courts with both the same legal theory and the same factual predicate underlying the constitutional argument."  *Landano*, 897 F.2d at 669. If the state courts have not been given "one full opportunity" to address the claim being pursued in the federal habeas proceeding, then the claim was not fairly presented.  *Rose*, 455 U.S. at 515. In such an instance, the claim is considered unexhausted and must be dismissed so that the state court can consider it in the first instance.  *Id.*

> b.    *Procedural Default*

Where a petitioner's claim is unexhausted, but state procedural rules would bar him from obtaining relief in the state courts, the claim is considered procedurally defaulted.  *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

Procedural default also occurs if the claim was exhausted, and the state court ruling was

based on an independent and adequate state rule. *Gray v. Netherland*, 518 U.S. 152, 162 (1996). An independent state-law ground is one that is not "interwoven with the federal law." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It could be "a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 562 U.S. 307 (2011). Meanwhile, an adequate state rule is one that is "firmly established and regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60 (2009). To be "firmly established," the state rule must clearly warn the defendant of the rule and its consequences; and to be "regularly followed," the state rule must be one that is consistently cited in similar cases or used in other federal and state habeas courts across the country. *Johnson v. Lee*, 578 U.S. 605, 608–09 (2016). An adequate state rule can exist even if it does not apply in every habeas case. *See Beard*, 558 U.S. at 60–61 (noting that "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others"). If the decision of the highest state court to which the petitioner presented his federal claims was not based "primarily on . . . [or] interwoven with federal law," then there was an independent and adequate state rule to support the judgment, and the claim is considered procedurally defaulted. *Id.* at 735.

Federal courts cannot consider procedurally defaulted claims unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### i.        Cause and Actual Prejudice

Cause for procedural default exists when "some objective factor external to the defense impeded counsel's efforts to comply with the State procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). And actual prejudice exists where the cause for default "worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Ineffective assistance of trial or direct appeal counsel can be a cause for procedural default. *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 759 (3d Cir. 2018). In *Strickland v. Washington*, the Supreme Court established a two-pronged test that federal habeas petitioners must satisfy in ineffective assistance of counsel claims. 466 U.S. 668, 687–88 (1984). First, the petitioner must demonstrate that trial counsel's performance was objectively unreasonable. *Id*. To do so, the petitioner must show specific acts by his counsel that fell "outside the wide range of professionally competent assistance." *Id.* When evaluating counsel's conduct, a federal court must "indulge [in] a strong presumption" that counsel acted reasonably. *Id.* at 689. Counsel's actions must be considered under the totality of the circumstances, "viewed as of the time of [said] conduct," and deference must be given to strategic decisions made by counsel. *Id.* at 689–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

If the petitioner can show that his trial counsel committed unreasonable errors, he moves on to the second *Strickland* prong and must prove to a "reasonable probability" that said errors prejudiced the result in his case. *Id.* at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* The petitioner must show how counsel's unprofessional errors "actually had an adverse effect on the defense." *Id.* at 693.

Unlike the right to effective assistance from trial and direct appeal counsel—which is grounded in the Sixth Amendment—there is no federal constitutional right to collateral appeal counsel. *Coleman*, 501 U.S. at 754. So, although ineffective assistance of trial and direct appeal

counsel may excuse a procedural default if counsel's failures satisfy *Strickland*, ineffective assistance of collateral appeal counsel cannot, on its own, excuse a procedural default. *Id.* at 753–54. Nonetheless, in *Martinez v. Ryan*, the Supreme Court established an equitable exception whereby inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedurally defaulted claim of ineffective assistance of trial counsel. 566 U.S. 1, 9 (2012). The federal courts construe this exception narrowly, applying it only where the habeas petitioner was "impeded or obstructed in complying with the State's established procedures." *Id.* at 13; *see also Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (holding that the *Martinez* exception applies only when state procedural rules require the petitioner to raise his ineffective-assistance claims at state habeas rather than on direct appeal, or where state procedural rules "make[ ] it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal.").

Because Pennsylvania's procedural rules dictate that a habeas petitioner should wait until initial-review collateral proceedings to raise claims of ineffective assistance of trial counsel, a habeas petitioner who was convicted under Pennsylvania law can rely on *Martinez* to excuse a procedurally defaulted *Strickland* claim. *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). The Third Circuit views *Martinez* as a three-part test such that a habeas petitioner qualifies for the exception only if he can show that: (1) his procedural default was caused by ineffective assistance of post-conviction counsel or the absence of counsel in the initial-review collateral proceeding, (2) this ineffectiveness of counsel was raised in the first collateral proceeding when the claim could have been heard, and (3) the underlying claim of trial counsel ineffectiveness has some merit. *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (citing *Martinez*,

566 U.S. at 13–14).  Should the petitioner fail to satisfy any of these three conditions, his claim will remain procedurally defaulted without excuse and the federal habeas court will be barred from granting it.  *Id.* at 119–21.

### ii.        Fundamental Miscarriage of Justice

In addition to cause and prejudice, a petitioner may overcome a procedural default by showing a fundamental miscarriage of justice would result if habeas review were denied.  A fundamental miscarriage of justice is proven when a petitioner shows that he is "innocent of the charge for which he was incarcerated."  *Kuhlmann v. Wilson*, 477 U.S. 436 (1986).  The Supreme Court has "consistently reaffirmed the existence and importance of [this] exception" for allowing review of a procedurally defaulted claim and thus the potential correction of a procedural injustice.  *Schlup v. Delo*, 513 U.S. 298.  That said, the Court has limited application of this exception to extraordinary circumstances and has not extended it to cases where petitioner's "guilt is conceded or plain."  *Kuhlmann*, 477 U.S. at 452.

### c.        *Denial on the Merits as an Alternative to Procedural Bar Issues*

Generally, a petitioner must satisfy the exhaustion requirement or excuse any procedurally defaulted claim before a federal court will review the merits of their claim. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  However, pursuant to 28 U.S.C. § 2254(b)(2), a federal court can bypass these procedural issues and deny a petitioner's application on the merits.  Section 2254(b)(2) codified the Supreme Court's decision in *Granberry v. Greer*, which held that federal district court judges can "summarily . . . dismiss a habeas petition if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  481 U.S. 129, 135–36 (1987).  Where "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," the claim has

"some merit" and the federal court *must* consider the procedural bar issues. *Workman v. Superintendent Albion SCI*, 15 F.3d 928, 938 (3d Cir. 2019) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).  On the other hand, if "it is perfectly clear that the applicant does not raise even a colorable federal claim," then the federal court can deny the petitioner's application on the merits. *Lambert*, 134 F.3d at 515.

> d.     *Section 2254(d) Standard*

If a petitioner shows that his claim is exhausted and not procedurally defaulted, or that the procedural default is excused, the federal court may grant habeas relief only if the petitioner satisfies the standard outlined in § 2254(d)(1) or (2).  Under the first subsection, the petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law."  28 U.S.C. § 2254(d)(1).  For a state court decision to be "contrary to" clearly established federal law, "the state court [must] arrive at a conclusion opposite to that reached by the Supreme Court on a question of law or . . . decide[ ] a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000) (cleaned up).  A state court decision involves an "unreasonable application of" clearly established federal law when "[it] resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* at 890.  This occurs when the state court "identifie[s] the correct governing legal rule . . . but unreasonably applie[s] it to the facts of the particular . . . case" or when the state court "unreasonably extend[s] a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuse[s] to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407.

Should the petitioner fail to satisfy § 2254(d)(1), federal habeas relief will be denied unless he can show under § 2254(d)(2) that the state court decision was "based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). There is a presumption of correctness for factual determinations made by state court judges, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004). However, if "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by [§ 2254(d)] . . . do not apply." *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). In such instance, the federal court will review questions of law and mixed questions of law and fact *de novo. Id.*; *see also McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).

      **2.**    **Analysis**

With these legal standards in mind, the Court turns to Cairns's objections to Judge Lloret's findings and conclusions as to five of the six bases on which he seeks habeas relief. The Court addresses each in turn.

      *a.*    *Ground 1:  Trial Attorneys Were Ineffective for Allowing Cairns to Plead Guilty to Aggravated Assault*

First, Cairns argues that he is entitled to habeas relief because his trial attorneys were ineffective for allowing him to plead guilty to aggravated assault without explaining the mens rea required for that crime and without first obtaining a ballistics report from Dr. Kapelsohn. (Doc. No. 1 at 8–9; Doc. No. 15 at 23–32.) Judge Lloret recommends that we reject this claim as unexhausted, procedurally defaulted, and meritless. (Doc. No. 28 at 11–12.) Cairns acknowledges that this claim "was not presented to the state courts," and because he could not present it to the state courts now, the claim "is procedurally defaulted." (Doc. No. 34 at 6.)[6] He

---

[6] Cairns raised the issue of Dr. Kapelsohn's report in his PCRA challenge to the third degree murder charge, but not as a challenge to his convictions for aggravated assault.

argues, however, that the procedural default is excused because he can show under *Martinez* that his PCRA counsel was ineffective for failing to raise the claim in his Amended PCRA Petition. (*Id.* at 7–15.)  The Court agrees with Judge Lloret that Cairns cannot show excuse for the procedural default under *Martinez* because he cannot show that there is some merit to his underlying claim for ineffective assistance of trial counsel.  *See Cox*, 757 F.3d at 119 (citing *Martinez*, 566 U.S. at 13–14).

### i.      Mens rea

Cairns argues that his trial attorneys were ineffective because they failed to accurately explain the mens rea required for a conviction of aggravated assault under § 2702(a)(6).  (Doc. No. 1 at 8–9; Doc. No. 15 at 23–32.)  Specifically, Cairns argues that his trial attorneys failed to explain to him that to commit aggravated assault he had to have "the conscious object to injure someone." (Doc. No. 34 at 8, 14–15 (describing this as "the requisite mens rea to commit [a]ggravated [a]ssault").)

A defendant commits aggravated assault when he "attempts by physical menace to put" a police officer "while in the performance of duty, in fear of imminent serious bodily injury."  18 Pa. Stat. & Cons. Stat. § 2702(a)(6), (c)(1).  Cairns seems to read the word "attempt" in § 2702(a)(6) to mean that conviction of this charge would have required the prosecution to establish specific intent to injure the police officers.  (Doc. No. 34 at 9–11.)  This misunderstands the law.  Pennsylvania courts have explained that a defendant need not have a "specific intent to cause injury" to "attempt[ ] by physical menace" to place someone "in fear of imminent serious bodily injury." *See In re Maloney*, 636 A.2d 671, 674 (Pa. Super. Ct. 1994) (excluding § 2701(a)(3) from list of charges that "required a specific intent to cause injury"); *see also id.* ("[T]he act of pointing a gun at another person can constitute a simple assault as an attempt by physical menace to put another in fear of imminent serious bodily injury." (quotation marks

omitted)).[7]  Because a specific intent to injure is *not* an element of aggravated assault under § 2706(a), Cairns's trial attorneys were not deficient for failing to discuss this mens rea with him before he pleaded guilty.[8]

Neither has Cairns shown that his trial attorneys otherwise failed to explain the law governing aggravated assault.  "When addressing a guilty plea, counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer."  *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (cleaned up).  Cairns's trial counsel did so.

During the plea hearing, Cairns repeatedly confirmed that his attorneys went over the plea colloquy, including the law of aggravated assault, with Cairns before the hearing.  Plea Tr. at 6:11–16 ("THE COURT: It's my understanding, from speaking to your attorneys, you and your attorneys went over this colloquy yesterday, this discussion of law; is that correct?  THE

---

[7] The language of § 2702(a)(6) is nearly identical to the language used to define simple assault in § 2701(a)(3).  *Compare* 18 Pa. Stat. & Cons. Stat. § 2702(a)(6) ("A person is guilty of aggravated assault if he . . . attempts by physical menace to put any of the officers, agents, employees or other persons enumerated in subsection (c), while in the performance of duty, in fear of imminent serious bodily injury."), *with id.* § 2701(a)(3) ("A person is guilty of assault if he . . . attempts by physical menace to put another in fear of imminent serious bodily injury.").  The only difference between the two sections is whether the victim of the assault is a law enforcement agent.  *See Commonwealth v. Henderson*, No. 524 MDA 2013, 2014 WL 10937085, at *6 (Pa. Super. Ct. May 13, 2014) ("The salient difference between the simple assault by physical menace subsection and the aggravated assault by physical menace subsection is the occupation of the victim; the aggravated assault section requires that the victim be one of 27 enumerated 'officers, agents, or employees,' while the simple assault subjection requires that the victim merely be another person." (quotation marks omitted)).

[8] For this reason, Cairns also has not shown a "reasonable probability" that he would have chosen not to plead guilty if his attorneys had discussed specific intent.  *Weeks v. Snyder*, 219 F.3d 245, 259 (3d Cir. 2000) (explaining that a petitioner demonstrate prejudice under *Strickland* in the guilty plea context by demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" (quotation marks omitted)); *see also id*. at 260 ("In order to examine the prejudice issue, we must first determine what Willard would have learned had he researched the effect of Govan's refusal to testify.  We must then determine whether there is a reasonable probability that if Weeks had been informed of the results of this research, he would have insisted on going to trial.").

DEFENDANT: Yes, Your Honor."); *id.* at 13:1–21 ("THE COURT: Now, you had sufficient opportunity to meet with counsel and discuss these matters?  THE DEFENDANT: Yes, Your Honor.  THE COURT: You and Ms. Baatz and Mr. Lacson have met and discussed the charges and the evidence; is that correct?  THE DEFENDANT: Correct. . . ."); *id.* at 24:2–16 ("BY MR. LACSON:  Q. Mr. Cairns, both myself and Ms. Baatz, we went over your case in the motions, jury selection, we went over all that with you; is that correct?  A. Yes.  Q. There were also other members of our office, more senior members of our office, that did the same thing:  that went over your case, the rights you're giving up and the trial process; is that correct?  A. Yes.  Q. We also had a more senior attorney in our office as well as me and Ms. Baatz went over the guilty plea colloquy and what it means to plead guilty; is that correct?  A. Yes.").

At the PCRA hearing, Attorney Lacson reiterated that he and other attorneys from his office explained the law governing each charge, including aggravated assault, to Cairns before the plea hearing.  *See* PCRA H'rg Tr. at 145:21–25 ("A. . . .  We went through each charge and we spoke about the relative likelihood.  Q. So you specifically remember doing that prior to the plea?  A. Yes, yes, sir."); *id.* at 150:23–25 ("Q. And did you go over with him the various legal aspects of the case as well?  A. Yes.").

Finally, even if Cairns could show that his trial attorneys' advice before the guilty plea was objectively unreasonable, his claim for ineffective assistance of trial counsel fails because he cannot show that he was prejudiced.  To show prejudice, Cairns must "demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Weeks*, 219 F.3d at 259 (quotation marks omitted).  Here, Cairns was not prejudiced by any error in counsel's discussion of the law on aggravated assault because Judge Finley accurately recited the language of § 2702(a)(6) during the plea colloquy:

> THE COURT:  All right.  Now, the next offense is that of
> aggravated assault.  That is contained here in Count[s f]ive through
> 12, that is that you did attempt by physical menace to put an officer,
> agent, employee or another person in danger or fear of imminent
> serious bodily injury. . . .  Do you understand that, sir?
>
> THE DEFENDANT:  Yes, Your Honor.

Plea Tr. at 15:20–16:12.  *See Weeks*, 219 F.3d at 260 ("Th[e plea] colloquy belies [petitioner's]

assertion that he would have insisted on going to trial if he had known about the legal

ramifications of [the government witness's] refusal to testify.  In light of the judge's clear

explanation to [the petitioner] of the uncertainty with respect to the admissibility of [the

witness's] statements, [trial counsel's] alleged failure to do so can hardly have prejudiced [the

petitioner].  The absence of prejudice from the alleged deficient legal representation is clear.").

### ii.      Ballistics Report

Next, Cairns argues that his trial attorneys were ineffective because they allowed him to

plead guilty to aggravated assault without first obtaining an expert report from Dr. Kapelsohn.

(Doc. No. 34 at 13–15.)  According to Cairns, that report would have shown that he could not

have seen the police officers from his bedroom window and that the shots, as fired, were not

directed toward the police.[9]  (*Id.*)  But, as Judge Lloret notes, this argument is belied by the fact

that it was Cairns that "volunteered without provocation to plead guilty."  (Doc. No. 28 at 13.)

Up until this time, trial counsel had been preparing for a jury trial and had been consistently

---

[9] Cairns reasons that if he did not know the police officers were there, he could not have been
found guilty of aggravated assault.  The Court notes however, that the facts recited at the plea hearing,
and to which Cairns agreed, *see* Plea Tr. at 25:2–34:9, 36:12–16, show that he did "attempt by physical
menace" to place the officers in "fear of imminent serious bodily injury."  "Pointing a gun at an officer
constitutes an attempt by physical menace to place the officer in fear of imminent serious bodily injury."
*Henderson*, 2014 WL 10937085, at *6.  During the plea hearing, Cairns conceded that he "did repeatedly
shoot a handgun in the direction of police officers."  Plea Tr. 14:19–15:2; 16:23–17:11; *see also id.* at
34:23–35:6 (trial counsel explaining that "Mr. Cairns is pleading guilty to firing his weapon in the
direction of the police officers").

corresponding with Dr. Kapelsohn about the written report and keeping Cairns up to date with such correspondence.  PCRA H'rg Tr. at 37:2–38:12, 138:21–139:2, 162:20–25.  Only after Cairns decided to plead guilty did trial counsel instruct the expert to suspend, and then ultimately terminate, his work on the report.  *Id.* at 37:11–24, 158:15–159:4.  "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."  *Strickland*, 466 U.S. at 691.  Thus, by volunteering to plead guilty, Cairns gave trial counsel a reasonable basis for instructing Dr. Kapelsohn to stop working on the expert report and cannot now argue that this decision amounts to deficient performance.

*     *     *

Cairns has not shown that his trial counsel rendered ineffective assistance in connection with his plea for aggravated assault.  Accordingly, Cairns's PCRA counsel was not ineffective for failing to raise this specific argument on PCRA review.  *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective assistance of counsel based on an attorney's failure to raise a meritless argument.").  Cairns does not qualify for the *Martinez* exception.  Thus, this claim remains procedurally defaulted, and Cairns's request for habeas relief is denied on this ground.

> b.      *Ground 2:  Trial Attorneys Were Ineffective for Allowing Cairns to Plead Guilty to Third Degree Murder when There Was No Factual Basis for that Charge.*

Second, and similarly, Cairns argues that his trial attorneys were ineffective because they allowed him to plead guilty to third degree murder when there was no factual basis for that charge.  (Doc. No. 1 at 10–11; Doc. No. 15 at 23–32.)  Judge Lloret recommends dismissal of this claim as well, finding that it is procedurally defaulted because although Cairns raised the issue in his initial PCRA proceeding, the Pennsylvania Superior Court refused to consider it on

30

appeal because his appellate attorney failed to discuss the pertinent legal theory.  (*See* Doc. No. 28 at 15 (explaining that the Superior Court found Cairns's claim waived because it was presented purely as a claim for lack of factual basis, and he did not apply the applicable *Strickland/Pierce* framework).)  Although the Pennsylvania Superior Court did not expressly find that Cairns waived this argument, the Court agrees with Judge Lloret that the appellate court refused to consider it because Cairns failed to discuss the relevant legal standard, which under Pennsylvania law, results in waiver of the claim.  *See* Pa. R. App. P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); *Leake v. Dillman*, 594 F. App'x 756, 759 (3d Cir. 2014) ("The requirement that Petitioner must meaningfully develop his arguments on appeal and cite to appropriate authorities has been stated in unmistakable terms by the Pennsylvania Supreme Court, and is embodied in the state's rules of appellate procedure.  Moreover, the Superior Court refused to consider Petitioner's claims on the merits and its refusal is consistent with other decisions.  We conclude that the Superior Court's decision was based upon an independent and adequate state law ground." (internal citations omitted)).  Because Pennsylvania's waiver doctrine represents an independent and adequate state law ground for rejecting Cairns's claim for ineffective assistance of trial counsel, Cairns's claim is procedurally defaulted.

Cairns does not contest the procedural default, and instead, argues that the default is excused under *Martinez*.  But *Martinez* does not provide an excuse for PCRA counsel's failure to properly raise a claim on *appeal*.  *See Martinez*, 566 U.S. 1 at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review

collateral proceedings . . . ."); *Branthafer v. Glunt*, Civil Action No. 3:14–CV–00294, 2014 WL 10417817, at *5 (M.D. Pa. Dec. 23, 2014) ("[T]he *Martinez* rule does not apply to allegedly deficient performance by counsel during appellate PCRA proceedings before the Superior Court of Pennsylvania.").  Because Cairns's claim is procedurally defaulted, it may not be considered by this Court.

In the alternative, the Court agrees with Judge Lloret that Cairns's claim lacks merit and could be denied under § 2254(b)(2).  As explained above, before the Superior Court, Cairns failed to discuss the effectiveness of trial counsel under the proper legal theory, and instead, he "baldly assert[ed] that the factual basis for the plea [of third degree murder] failed to establish malice and causation."  *Cairns PCRA Appeal*, 2019 WL 1224696, at *4.  The Superior Court rejected this separate claim and concluded that "the Commonwealth properly established a factual basis for third degree murder," including malice and causation, because Cairns "consciously disregarded an unjustified and extremely high risk that his actions in shooting nineteen times might cause serious bodily injury."  *Id.*  In his objections to Judge Lloret's R&R, Cairns once again argues that "there simply is no 'extremely high risk' that Mr. Cairns could have hit someone with his random shooting . . . ."  (Doc. No. 34 at 19; *see also id.* at 16 ("As an initial statement of fact, Mr. Cairns began shooting his gun before the police arrived, evincing that he had no malice or object that he was shooting at.  Therefore, he could not have been lawfully guilty of a crime that required malice.").)

But, as Judge Lloret explained, this Court is bound by the state court's determination on a matter of state law.  *See Estelle v. McGuire*, 502 U.S. 62 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Bound by the Superior Court's conclusion that "the trial court correctly decided"

that there was a "factual basis for third degree murder," Cairns cannot show that his trial attorneys were ineffective for failing to object to the guilty plea or the trial court's recitation of the murder charge during the plea colloquy.  *See Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("On state collateral review, the Pennsylvania Superior Court held that the [jury] instructions were correct as a matter of state law. . . .  Federal courts reviewing habeas claims cannot reexamine state court determinations on state law questions. . . .  Bound by the state court's determination that the instruction at issue comported with state law, it is evident that [the petitioner] cannot satisfy the first component of a viable ineffective assistance of trial counsel claim—that counsel's performance was deficient."  (quotation marks omitted)).

Habeas relief is denied on this ground as well.

> c.   *Ground 3:  Trial Attorneys Were Ineffective when They Gave Inaccurate Advice and "Coerc[ed] Mr. Cairns to Plead Guilty."*

Third, Cairns argues that his trial attorneys were ineffective because they failed to accurately advise him of the charges against him and the potential outcomes at trial, choosing instead to "coerce" Cairns into pleading guilty.  (Doc. No. 1 at 12–13.)  Judge Lloret recommends dismissal of this claim on the grounds that it is unexhausted, defaulted, and meritless.  (Doc. No. 28 at 18.)  Specifically, Judge Lloret finds:  (1)"Cairns never alleged before the state courts that he was potentially coerced into pleading guilty, and it is too late to present this claim to the state courts" now; and (2) "the claim is wholly undermined by the record created by the PCRA court."  (*Id.*)  Cairns objects to both conclusions, arguing that he raised this issue during the PCRA proceedings and disputing the facts on which Judge Lloret relies.  (Doc. No. 34 at 20–28.)

We agree with Judge Lloret that Cairns has not exhausted his state remedies with respect to this claim because it was not fairly presented to the state courts.  Although Cairns's PCRA

counsel claimed that his trial attorneys were ineffective in inducing Cairns to plead guilty, that claim was limited to the third degree murder charge and rested on the factual predicates that trial counsel:  (1) failed to understand the state law elements of third degree murder, (2) allowed him to plead guilty despite his being on medication, (3) failed to review all necessary discovery with him, and (4) failed to obtain Dr. Kapelsohn's conclusions on proper police procedures. *See Cairns Initial PCRA*, 2018 WL 10484002, at *5–6; *Cairns PCRA Appeal*, 2019 WL 1224696, at *2. Here, Cairns is asserting a wholly different factual predicate:  that trial counsel "conspired [with the prosecution] to deceive [him] to plead guilty by playing a word semantics game" and deliberately misinformed him of the state law elements of the charges in question so as to coerce the guilty plea.  This is a fundamentally different claim than the ineffectiveness claims that Cairns raised on PCRA review.  As such, this claim was not fairly presented at the state level, and Judge Lloret correctly found it to be unexhausted and defaulted.  *See Nara v. Frank*, 488 F.3d 187, 197–98 (3d Cir. 2007) ("A claim is exhausted if it was 'fairly presented' to the state courts.  A petitioner has fairly presented his claim if he presented the same factual and legal basis for the claim to the state court . . . ." (internal citations omitted)).

We also agree with Judge Lloret's second finding that Cairns has failed to excuse this default under *Martinez* because he has failed to show that this claim has some merit.  Cairns's bald assertions that trial counsel were ineffective because they coerced his plea are wholly unsupported by the factual record.  As Judge Lloret noted, and as we have previously discussed, "[plea] counsel went to great lengths to prepare Mr. Cairns for both his trial and his plea hearing. And . . . [plea counsel's] testimony, which the [initial PCRA c]ourt found credible, indicates that *Mr. Cairns* chose to enter a guilty plea, without any coercion or suggestion by counsel, and during a trial preparation meeting where counsel reviewed the evidence once again with him to

boot." (Doc. No. 28 at 18–19.)  Cairns may dispute the facts at this stage,[10] but he confirmed

them to be true and correct at the time of his plea colloquy.  *See* Plea Tr. at 20:8–11, 21:4–16.  In

short, there is no basis for finding trial counsel coerced Cairns into pleading guilty or provided

deficient representation before and during the plea hearing.  Because Cairns's underlying

*Strickland* claim lacks even some merit, his default is not excused under *Martinez*.  Habeas relief

is denied on this ground.

> d.      *Ground 4:  Trial Attorneys Were Ineffective when They Failed to Properly Identify a* Brady *Violation.*

Fourth, Cairns argues that his trial attorneys were ineffective because they failed to

recognize that the Commonwealth committed *Brady* violations during trial preparation.  (Doc.

No. 1 at 13–14.)  Judge Lloret recommends denying this claim as unexhausted, procedurally

defaulted, and meritless.  (Doc. No. 28 at 19.)  Judge Lloret finds that although Cairns raised

numerous arguments about discovery during the PCRA proceedings, he never framed the error as

a *Brady* violation.  Because it was not fairly presented to the state courts, the claim is

unexhausted and procedurally defaulted.  (*Id.*)  Judge Lloret also finds denial is warranted

because there is no basis in the record for finding that the Commonwealth failed to turn over

exculpatory material as required by *Brady v. Maryland*.  (*Id.* at 21 & n.13.)  Cairns objects to

Judge Lloret's recommendation, arguing that any default is excused under *Martinez* because

PCRA counsel "didn't know the difference between the *Brady* requirements and a proper motion

---

[10] Cairns objects to Judge Lloret's reliance on Attorney Lacson's testimony at the PCRA hearing:
"Quite frankly, attorney Lacson's PCRA testimony is not 'reliable' as asserted by [Judge] Lloret, but
rather, self serving to protect his ineptitude and knowing unlawful inducement of Mr. Cairns to plead
guilty to crimes for which he was not guilty of committing." (Doc. No. 34 at 24–25.)  But Judge Finley,
who oversaw the PCRA hearing, found Attorney Lacson's testimony credible and Cairns's contrary
testimony incredible.  This Court is bound by those credibility findings.  *See Marshall v. Longberger*, 459
U.S. 422, 434 (1983) (explaining that habeas courts have "no license to redetermine credibility of
witnesses whose demeanor has been observed by the state trial court, but not by them").

for discovery in the state system."  (Doc. No. 34 at 31.)

This claim was not fairly presented at the state level, and thus is unexhausted and procedurally defaulted.  In addition, the Court agrees with Judge Lloret that Cairns has failed to show the default is excused because there is no merit to Cairns's underlying ineffective assistance of trial counsel claim.

Under *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 87 (1963).  A *Brady* violation occurs if:  "(1) the evidence at issue is favorable to the accused, because [it is] either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'"  *Breakiron*, 642 F.3d at 133 (citing, inter alia, *Strickler*, 527 U.S. at 281–82).  *Brady* does not require that the prosecution "deliver [its] entire file to defense counsel."  *United States v. Agurs*, 427 U.S. 97, 111 (1976).  The prosecution has satisfied *Brady* when it has disclosed "any information actually known to [its office] and all information in the possession of [its] office, the police, and others acting on behalf of [its office]."  *Bridges v. Sec'y of Pa. Dep't of Corr.*, 706 F. App'x. 75, 82 (3d Cir. 2017) (quoting *Wilson v. Beard*, 589 F.3d 651, 659 (3d Cir. 2009) (internal quotation marks omitted).

Cairns has not pointed to any material evidence that was suppressed by the Commonwealth.  As Judge Lloret notes:

> Mr. Cairns essentially argues that, had he seen the ballistics report commissioned by his trial counsel, the autopsy report of the victim, hundreds of forensic photos, and 911 call transcripts, he would not have pled guilty.  Doc. No. 15, at 97; Doc. No. 27, at 2.  I find that Mr. Cairns makes no viable argument that he suffered a *Brady* violation prior to pleading guilty.  Mr. Cairns requested this material

> in his PCRA discovery motion, *see* Mar. 20, 2016 Req. for Disc. at
> 2, and then testified during a hearing on this motion that the
> Commonwealth indeed turned over this material to his counsel, but
> that his original trial counsel seemed unable to locate the material in
> preparation for the [PCRA] discovery hearing, *see* N.T. 6/23/16
> 34:2–8. Based on this statement alone, I find that the
> Commonwealth satisfied its discovery obligations under *Brady*.

(Doc. No. 28 at 20–21.)  The Court agrees.  Cairns has made no credible showing that the

prosecution withheld any evidence, let alone favorable evidence that could reasonably be taken

to have exculpated him of the charges in question.  Because there was no basis for asserting a

*Brady* claim, trial counsel did not act deficiently or prejudice Cairns when they failed to do so.

Habeas relief is denied on this ground.

> e. *Ground 5:  Trial Attorneys Were Ineffective when They Failed to
> Address Cairns's Cognitive Functioning during the Guilty Plea
> Colloquy and Failed to Recognize that He Was Highly Medicated.*

Fifth, Cairns argues that his trial attorneys were ineffective because they failed to

recognize that during the guilty plea hearing, Cairns was highly inebriated from the medications

he was taking for his mental illness.  (Doc. No. 1 at 16.)  Judge Lloret recommends dismissal of

this claim as procedurally defaulted on the grounds that it was not properly raised on PCRA

appeal—the Pennsylvania Superior Court found it had been abandoned.  (Doc. No. 28 at 22 &

n.17.)  He also finds that Cairns failed to show cause for that default, noting that the *Martinez*

exception applies only to ineffective assistance of initial review PCRA counsel.  (*Id.*)  In the

alternative, Judge Lloret finds the claim to be meritless, noting that although Cairns testified to

the issue at the PCRA hearing, the state court found him to be "an overall incredible witness."

(Doc. No. 28 at 22.)  Cairns acknowledges that on habeas review a federal court cannot

redetermine credibility, but nevertheless argues that Judge Lloret was wrong to apply that

premise to the facts of this particular claim.  (Doc. No. 34 at 40.)

As Judge Lloret finds, Cairns failed to raise this claim before the Pennsylvania Superior

Court, so it is unexhausted and procedurally defaulted. And as we stated above, Cairns cannot qualify for the *Martinez* exception because that applies only to ineffective assistance of initial review PCRA counsel, not the assistance of appellate counsel. *See Martinez*, 566 U.S. 1 at 16. Accordingly, this claim is non-cognizable.

In the alternative, the Court agrees with Judge Lloret that Cairns's claim is meritless because Cairns has failed to show that his trial attorneys acted deficiently. Cairns asserts that his trial counsel knew that he "was on powerful psychotropic medications" and still "made no attempts to ensure [that he] was able to understand the guilty plea proceedings." (Doc. No. 34 at 38.) He further alleges that trial counsel "advised [him] not to mention any mental illness as the judge might not accept the guilty plea." (*Id.*) But these allegations are overwhelmingly refuted by the factual record and unsupported by any credible testimony. During his plea colloquy, Cairns stated that he was on medication for his mental illness. Plea Tr. at 5:7–22, 6:11–16, 46:13–14. Judge Finley then asked Cairns questions about the medication, and Cairns repeatedly affirmed that he had no difficulty understanding the proceedings. *Id.* at 5:7–22, 6:11–16. After considering this testimony, Judge Finley found Cairns to have entered his plea knowingly, voluntarily, and intelligently with a full and complete understanding of the consequences of doing so. *Id.* at 47:16–48:2. In addition, although Cairns testified at the PCRA hearing that the medication had impaired his understanding, the court found his testimony incredible and contradicted by the record established at the plea hearing. *Cairns Initial PCRA*, 2018 WL 10484002, at *5. Judge Lloret correctly deferred to the PCRA Court's credibility determinations. *See Marshall*, 459 U.S. at 434. When the trial court's findings are properly considered, there is no basis for finding that trial counsel were deficient for allowing Cairns to plead guilty while taking his mental health medications.

Habeas relief is denied on this ground.

### B.      Cairns's Request for an Evidentiary Hearing

In his Amended Petition for habeas relief, Cairns includes a conclusory request for "an evidentiary hearing to more fully develope [sic] the facts and evidences of his defense." (Doc. No. 15 at 98.)  Judge Lloret recommends denying this request because Cairns has not met "the high bar required to obtain an evidentiary hearing in a section 2254 proceeding." (Doc. No. 28 at 24.)

"[A] district court is permitted to hold an evidentiary on a claim asserted in a § 2254 petition so long as such a hearing is not barred by 28 U.S.C. § 2254(e)(2)." *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010).  The first issue for the Court to consider is whether the petitioner developed the factual basis for a claim in the state court proceedings.  Under § 2254(e)(2), when a habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings," the federal habeas court is prohibited from holding an evidentiary hearing unless the petitioner shows that  (1) "the claim relies on . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;" or (2) "the claim relies on . . . a factual predicate that could not have been previously discovered through the exercise of due diligence."  28 U.S.C. § 2254(e)(2)(A).  In addition, the petitioner must show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  *Id.* § 2254(e)(2)(B). If the Court finds that the petitioner did not fail, of his own accord, to develop the factual basis for a claim, then the Court, in its discretion, may grant the request for a hearing after making "two related considerations": (1) "whether the petition presents a *prima facie* showing which, if proven, would enable the petitioner to prevail on the merits of the asserted claim," and

(2) whether the "record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Palmer*, 592 F.3d at 393 (quotation marks omitted).

Here, Cairns's Amended Petition includes a conclusory request for an evidentiary hearing and provides no discussion as to why that hearing is necessary.  Despite this failure, Judge Lloret considered the appropriateness of an evidentiary hearing as to each of Cairns's claims and found it unwarranted because:

> [Cairns] failed to develop several of his claims in state court.  For those claims which he developed in state court, the record refutes his accusations.  There is no prima facie merit to any of Mr. Cairns's claims on habeas review, and it is highly unlikely that an evidentiary hearing would add any support to these claims.  This is particularly so in light of the testimony provided during the PCRA Court's evidentiary hearing, which my review indicates was properly conducted and is deserving of deference on habeas review.

(Doc. No. 28 at 25.)  Cairns objects to this conclusion, claiming that he is entitled to an evidentiary hearing because "[i]f all of the facts were to come to light Mr. Cairns would not have been found guilty of the underlying crimes by any fact finder."  (Doc. No. 34 at 33.) Specifically, Cairns believes the hearing would show that one of the bullets found in the ground near the police officers is not "actually a bullet" and that Officer Harold used an inappropriate amount of force when he fired the shot that ultimately killed Zienkwicz because Cairns was firing at random, not toward the police.  (*Id.*)

Cairns did not raise this argument before Judge Lloret, so it is not properly before the Court now.  *See Coker v. DelBaso*, No. 2:18-CV-3385, 2020 WL 1816084, at *11 (E.D. Pa. Apr. 10, 2020) ("The allegations put forward in Coker's objections to the R&R as to claim six were never raised in his habeas petition. . . .  Additionally, they do not even attempt to address what is legally incorrect with Judge Hey's findings as to this claim.  Coker's attempt to raise entirely new arguments and his failure to squarely respond to the R&R are each independent bases for

plain error review of the R&R."); *see also Kightlinger v. Pennsylvani*a, No. CIV.A. 11-936, 2013 WL 4504382, at *2 (W.D. Pa. Aug. 22, 2013) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived. . . .  Indeed, for the district judge to review new evidence or arguments raised in objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." (cleaned up)).

Moreover, the Court finds no error in Judge Lloret's conclusions and agrees that Cairns has failed to show any justification for holding an evidentiary hearing.  As discussed above, the evidence found credible by Judge Finley shows that Cairns volunteered to plead guilty before Dr. Kapelsohn completed his report.  Regardless of what that report would have ultimately concluded, the Court cannot find that trial counsel rendered ineffective assistance when they told Dr. Kapelsohn to stop working on it, given Cairns's statement that he wished to pursue a plea instead of going to trial.  Because the credible record evidence precludes habeas relief as to this claim, the Court will not hold an evidentiary hearing.  *See Schriro v. Landrigan*, 550 U.S 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *Campbell v. Vaughn*, 209 F.3d 280, 290 (3d Cir. 2000) ("At all events, we hold that the PCRA court made a sufficient determination of the factual issue on which Campbell's habeas appeal turns.  AEDPA dictates that we must presumptively defer to this determination absent clear evidence to the contrary.  As Campbell has introduced no such clear evidence, we further hold that ordering a new evidentiary hearing in this situation would be inappropriate." (internal citations omitted)).

Cairns's request for an evidentiary hearing is denied.

**C.    Alleged Bias of Judge Lloret**

In addition to his specific objections to Judge Lloret's findings, Cairns also argues that

"he has been denied a f[a]ir/unbiased habeas review due to [Judge] Lloret's objectively biased position favoring the state." (Doc. No. 34 at 34.) Cairns argues that Judge Lloret is biased against him because Judge Lloret:

- Refers to the events on February 17, 2013 as a "shootout," but it was not (*id.* ("If there was a shootout Mr. Cairns would have rapid *fired* using multiple weapons."));

- Ignores "the laws regarding procedural default, the cause and prejudice standards and the exception announced in *Martinez*" (*id.*);

- Says claims I and II are state law claims, but in reality they are ineffectiveness of "all counsel's [sic]" and thus, raise Sixth Amendment claims (*id.* at 34–35);

- Acts as a "co-advocate for the state" when he finds that the Superior Court refused to consider Ground 2 on the basis of waiver (*id.* at 35);

- "[P]ervert[s] the factual record and lie[s]" when he finds that the materials requested in Cairns's PCRA discovery motion were previously turned over by the State (*id.* at 35–36);

- Concludes that "Cairns 'actually saw' the evidences [sic] he has been requesting" (*id.* at 36); and

- "[C]onverts Mr. Cairns' Rule 7 motion into a Rule 6 motion and then den[ies] it" (*id.* at 37).[11]

These arguments merely reiterate Cairns's objections to Judge Lloret's substantive rulings in the R&R. That is not a valid basis for finding a federal judge biased, such that his should be recused from a case. *See Liteky v. United States*, 510 U.S. 540, 554–55 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). And for the reasons

---

[11] Cairns refers to the Federal Rules Governing Section 2254 Cases. Rule 7 governs requests to expand the record, stating that "if the [habeas] petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating the petition." R. Governing § 2254 Cases 7(a). Rule 6 governs discovery and states that a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." R. Governing § 2254 Cases 6(a). Cairns argued that Judge Lloret should have "order[ed] the state courts to provide the necessary documents" under Rule 7 and not expected Cairns to "submit [those] documents to the federal court" to expand the record under Rule 6. (Doc. No. 34 at 37.) It is immaterial here which Rule Cairns proceeded under because Judge Lloret found Cairns was not entitled to seek new evidence or have an evidentiary hearing.

discussed throughout this Memorandum, the Court finds no error in Judge Lloret's findings and conclusions.  Accordingly, Cairns's objection on the ground of improper bias is also rejected.

**IV.**     **CONCLUSION**

      For the reasons discussed above, Cairns's objections to Judge Lloret's R&R are overruled, and the R&R is adopted in its entirety.  Cairns's Amended Petition is denied.

      An appropriate order follows.